# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CR-16-119-R |
| ZANE P. YARGEE, et al. | ) ) ) |
| Defendants. | ) ) |

## ORDER

Before the Court is Defendant Yargee's Motion to Suppress evidence seized in a purported traffic stop on July 4, 2016, Doc. 1128.[1] The Court held a suppression hearing on January 3, 2018, and denied the Motion based on the evidence presented and the parties' arguments. The Court finds that the traffic stop was justified at its inception, officers had reasonable suspicion to extend the stop, and in the alternative, Defendant Yargee fails to show a factual nexus between his alleged illegal seizure and the challenged evidence.

The facts surrounding this stop and drug seizure are largely undisputed. Four officers from the Oklahoma City Police Department—informed by the FBI's contemporaneous wiretap evidence and ground surveillance of an Irish Mob drug deal that occurred only twenty minutes earlier—stopped a maroon Audi vehicle on the highway in Oklahoma City after observing an expired tag in violation of 48 Okla. Stat. § 1151(A)(5) ("It shall be unlawful for any person to . . . operate a vehicle without proper license plate or decal . . . ."). Defendant

---

[1] The Court denied Defendant Potts' motion (Doc. 1136) to join this Motion to Suppress because Potts lacks standing. *See* Doc. 1266. Defendant Brown did not join this Motion, nor would he be able to show standing. *See* Docs. 1138, 1139.

1

Yargee was a backseat passenger in the Audi. Oklahoma City Sergeant Patrick Morgan testified that (1) Yargee and another passenger appeared abnormally nervous during the traffic stop, (2) passengers gave implausible and inconsistent responses to the officers' questions regarding their travel plans, and (3) passengers exhibited various Irish Mob insignia on their persons. An officer asked and was denied consent from the driver to search the vehicle, after which the officer called for a drug-sniffing dog. The officers then removed the driver and passengers one-by-one, handcuffed them, and placed them in separate police vehicles while officers waited for the dog to arrive. The dog arrived around twenty minutes after the stop began and alerted officers to the presence of drugs. A subsequent search revealed a loaded .32 caliber Bryce semi-automatic handgun in the glovebox and a Dillard's bag in the trunk containing about a pound of methamphetamine. *See* Doc. 1189, at 3. Defendant Yargee now moves to suppress the gun and drugs as fruit of an unlawful search and seizure.

"To suppress evidence as the fruit of his unlawful detention, [a defendant] must make two showings: (1) 'that the detention did violate his Fourth Amendment rights'; and (2) that there is 'a factual nexus between the illegality and the challenged evidence.'" *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001) (quoting *United States v. Nava–Ramirez*, 210 F.3d 1128, 1131 (2000)). The Court's Fourth Amendment inquiry into whether a search or seizure was reasonable is twofold: "first, one must consider 'whether the action . . . was justified at its inception' . . . ; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

The Police Department's stop was justified at its inception for two reasons. First, under the "vertical collective knowledge doctrine," officers reasonably relied on the FBI's information that a maroon Audi with a specified license plate was leaving Walmart eastbound in possession of illegal drugs from an Irish Mob deal. *United States v. Whitley*, 680 F.3d 1227, 1235 (10th Cir. 2012). FBI Special Agent David Wardlaw testified that on the afternoon of July 4, 2016, wiretap intercepts from Defendants Potts and Brown's cellphones revealed the location, timing, and cars that would soon exchange "pizza," or methamphetamine. *See* Government's Suppression Hearing Exhibits 3-G through 3-Q. Law enforcement then surveilled those cars in the Walmart parking lot, as predicted, and confirmed a package exchanged into the maroon Audi. To stop the Audi, officers could have relied on the wiretap intercepts and surveillance alone; they provided reasonable suspicion, if not probable cause, to believe the car and its passengers were involved with drug-trafficking. However, the FBI wanted to protect ongoing wiretaps of two Irish Mob leaders. Therefore, with the help of aerial surveillance and the FBI's tip, officers conducted a pretextual traffic stop at 6:30 P.M. that same day based on an expired tag. Even without disclosing their true motive for the stop, officers' suspicion of drug-trafficking was sufficient. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Second, the stop was justified at inception because the officers observed a traffic violation. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). Defendant's argument that taxes were owed to the sovereign Cherokee nation, and not to the State of Oklahoma, is meritless. The statute clearly prohibits both operating a car "on which all taxes

due the state have not been paid" *and* driving with an "[im]proper license plate or decal." 48 Okla. Stat. § 1151(A)(5). Thus, the plate's expired tag justified the stop. *See* Doc. 1189-1.

The stop was also "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Again, officers had two grounds to stop the Audi. Looking to the drug-trafficking justification, a twenty-minute detention was reasonable. The Supreme Court held in *Rodriguez* "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." 135 S. Ct. at 1612. To examine whether their suspicions of drug-trafficking were correct, officers reasonably waited twenty minutes for the drug-sniffing dog to arrive. Alternatively, assuming officers stopped the Audi because of the expired tag, officers presented additional evidence needed to extend the traffic stop, which is typically a "relatively brief encounter." *Knowles v. Iowa*, 525 U.S. 113, 117 (1998). The Court is skeptical that passengers' nervousness was abnormal after four uniformed officers' flanked both sides of the vehicle in an abrupt show of force. Nonetheless, officers found reasonable suspicion in passengers' statements, which reflected inconsistent and implausible travel plans,[2] and their apparent affiliation with the Irish Mob. Therefore, the stop was reasonable in scope based on either justification.[3]

---

[2] Sergeant Morgan testified that one passenger told an officer they were headed to Tulsa, whereas another said they were headed to a different location. Additionally, a passenger allegedly said they were driving to pick up his uncle, even though the vehicle was already at capacity with five passengers.

[3] Morgan also testified that had he been able to disclose and rely on the wiretap evidence, he would have conducted a probable cause search of the car even before the drug-sniffing dog arrived. The Court will not speculate whether probable cause existed when officers first initiated the stop. Reasonable suspicion was enough to conduct the stop, and the "tolerable duration" of that stop is "determined by the seizure's 'mission.'" *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Either mission, in light of officers' observations during the encounter, justified the twenty minute stop in this case. The Court also declines to decide whether the manner in which the stop was effectuated— handcuffing the passengers and placing them in separate vehicles before the dog arrived—constituted an

Otherwise, even if officers unconstitutionally seized Defendant Yargee, he lacks standing to suppress the gun and drugs because he failed to demonstrate a "factual nexus" between his unlawful detention and discovery of the evidence. *DeLuca*, 269 F.3d at 1133. The defendant has the burden to show Fourth Amendment standing or factual nexus—"that the methamphetamine would never have been found but for *his,* and only his, unlawful detention." *Id.* To do so, Yargee would have to show that "had he requested to leave the scene of the traffic stop, he would have been able to do so in the [seized car]." The maroon Audi appeared to belong to Defendant Derek Soeten, and Yargee does not claim he had permission to use the car. *See* Government's Exhibit 3-K, at 1. "[W]ithout any evidence to the contrary, we must assume that regardless of [Defendant Yargee's] presence, the car and its owner would have continued to be detained and the officer would still have found the methamphetamine." *DeLuca*, 269 F.3d at 1133. Therefore, Defendant Yargee's Motion to Suppress, Doc. 1128, is DENIED.

IT IS SO ORDERED this 4th day of January, 2018.

*David L. Russell* (signature)
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

unconstitutional arrest, rather than a valid "*Terry* stop," *Knowles v. Iowa*, 525 U.S. 113, 117 (1998). As the Court discusses herein, Yargee has failed to meet his burden of showing the required "factual nexus" for suppression. *United States v. DeLuca*, 269 F.3d 1128, 1133 (10th Cir. 2001).